FIRST EASTERN BANK, N.A. *vs.* ROBERT TRENT JONES & others[1].

Suffolk. September 9, 1992. - November 9, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Trust*, Business trust, Personal liability of trustee, Contracts of trustee. *Contract*, With trustee. *Statute*, Construction.

The provisions of G. L. c. 203, § 14A, limiting the personal liability of trustees do not apply to a trustee acting under a trust that is not of the donative type associated with probate practice. [657-661]

Discussion of the common law of Massachusetts with respect to a trustee's personal liability on a contract that the trustee signs on behalf of a trust. [661-663]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Theos D. McKinney, III*, for Robert Trent Jones.

*Marc P. Frey* for First Eastern Bank, N.A.

*Michelle J. Lipton*, for Charles W. Roy & another, was present but did not argue.

GREANEY, J. A judge of the United States District Court for the District of Massachusetts has certified to us, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981), the following question: "Do the provisions of [G. L. c.] 203, § 14A (1990 ed.), apply to a trustee acting under a trust not of the donative type associated with probate practice?"[2] The

---

[1]Three other defendants, who are trustees of the Ipswich Club Development Co., and the project manager of the business. This proceeding involves only the bank and Robert Trent Jones.

[2]This statute reads in full as follows:

"Unless otherwise provided in the contract, a trustee shall not be personally liable on contracts properly entered into in his fiduciary

trust at issue is a Massachusetts business trust created to develop a real estate project. We answer this question: "No." We also comment briefly on a second issue to which our attention has been directed by the certifying judge, but which is not the subject of an additional certified question.

The certified question arises from a third-party complaint brought by the third-party plaintiff, First Eastern Bank (bank), against the third-party defendant, Robert Trent Jones (Jones). The following are relevant facts contained in the record and memorandum accompanying the certification. On February 18, 1986, Jones and three other individuals executed the "Ipswich Club Development Co. Agreement and Declaration of Trust" (trust). The trust was established to plan and develop a county club complex and associated facilities in Ipswich, including a golf course designed by Jones, and to sell real estate surrounding the club. The trust was declared to be a "Massachusetts business trust," see generally G. L. c. 182 (1990 ed.), and the instrument creating the trust was recorded in the Essex South registry of deeds. On November 6, 1988, the bank and the trust entered into a commercial loan agreement which provided in part that the bank would loan the trust $5,000,000 by means of a line of credit. As security for this loan, the trustees promised to assign to the bank promissory notes secured by mortgages on

capacity in the course of administration of the trust estate unless he failed to reveal his representative capacity and identify the trust estate in the contract.

"A trustee shall be personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he was personally at fault.

"Claims based on contracts entered into by a trustee in his individual capacity, on obligations arising from ownership or control of the trust estate, or on torts committed in the course of trust administration may be asserted against the trust estate by proceeding against the trustee in his fiduciary capacity, whether or not the trustee was personally liable therefor.

"The question of liability as between the trust estate and the trustee individually may be determined in an accounting, surcharge, indemnification or other appropriate proceeding."

single family homes to be built on land surrounding the planned country club and golf course.

On April 6, 1989, Charles Roy, stating that he was acting for himself and his wife, entered into two "Home Site Purchase Agreements" with one trustee. Each agreement contained an addendum providing that the Roys had the unconditional right to sell the property back to the trust at cost. Shortly thereafter, the Roys executed two promissory notes to the trust, secured by a mortgage on each lot. The trust immediately assigned the notes and underlying mortgages to the bank. Sometime about July 6, 1990, Roy asserted that the above mentioned addenda had been altered unilaterally after he had forwarded the agreements to the trust. As allegedly altered, the addenda provided that the Roys had the right to sell the property to the trust at cost *at the trust's sole discretion.*

Roy demanded that the trust rescind the purchase agreements. When the trustees refused, Roy informed the bank that, due to the alleged fraud, payments on the promissory notes would cease. On August 9, 1991, the bank sought to foreclose on the Roys' mortgages securing the notes. Roy commenced a diversity action against the bank in the United States District Court for the District of Massachusetts seeking to enjoin the foreclosure. The bank thereafter filed a third-party complaint alleging that, should Roy prevail against it, Jones and the other trustees of the trust should be liable to the bank in tort, contract,[3] and under certain provisions of the Uniform Commercial Code. Jones moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. There is nothing to show that Jones person-

---

[3]Count I of the bank's third-party complaint seeks indemnity from Jones and the other trustees. The certifying judge interpreted this count as asserting, in part, a claim for contractual indemnity based on the commercial loan agreement. We read the record in light of the decision of the certifying judge. See *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 371-372 (1990).

ally participated in, or had knowledge of, the alleged altera-
tion of the addenda to the Roys' purchase agreements.

1. With respect to the certified question, our attention is
directed to the second paragraph of G. L. c. 203, § 14A, see
note 2 *supra,* which provides as follows: "A trustee shall be
personally liable for obligations arising from ownership or
control of property of the trust estate or for torts committed
in the course of the administration of the trust estate only if
he was personally at fault." Jones maintains that this provi-
sion applies to a Massachusetts business trust and operates to
protect him from liability on the bank's tort claims because
there is no indication that he was personally responsible for
any tortiously caused injury to Roy.[4]

In view of two Massachusetts decisions, the certifying
judge concluded that it was unresolved whether G. L. c. 203,
§ 14A, applied to the trustees of a Massachusetts business
trust.[5] The judge referred to *Apahouser Lock & Sec. Corp.*
v. *Carvelli,* 26 Mass. App. Ct. 385 (1988), in which, based
on the legislative background of § 14A, the Appeals Court
concluded that the provision was intended only to protect "a
trustee acting under a trust of the donative type associated
with probate practice, rather than a trustee of an organiza-
tion conducting a business which the trustee as an individual

---

[4]The bank also argues in a footnote in its brief that, because of an over-
lap in the legal and beneficial interests of the trust, the commercial entity
actually formed by the trust instrument is a partnership and not a business
trust. The argument is meant to suggest that Jones could be personally
liable in tort as a partner. This issue was not raised before the certifying
judge and no facts appear in the judge's memorandum with regard to it.
We decline to consider the contention.

[5]" 'Business organizations formed by declarations of trust' are 'a com-
mon . . . method . . . of conducting a commercial enterprise.' " *Hull* v.
*Tong,* 14 Mass. App. Ct. 710, 711 (1982), quoting *State St. Trust Co.* v.
*Hall,* 311 Mass. 299, 303, 304 (1942). While the basic form of a business
trust in many respects parallels that of a private family or charitable trust,
the purpose of the business trust is to hold and manage the assets of an
active business. See generally, Peairs, Business Corporations § 203 (1971).
By statute, unincorporated associations and business trusts are regulated in
certain ways not applicable to conventional trusts of the probate variety.
See generally G. L. c. 182; *Hull, supra* at 711; Restatement (Second) of
Trusts, § 1 comment b (1959).

controls." *Id.* at 388. The certifying judge noted that, shortly after *Apahouser* was decided, a decision of this court, without discussion and without reference to *Apahouser*, relied upon G. L. c. 203, § 14A, in holding liable the trustee of a real estate trust who was personally responsible for an unreasonable interference with surface waters (the tort of nuisance) which had caused the flooding of the plaintiff's property. *von Henneberg* v. *Generazio*, 403 Mass. 519, 525 (1988).[6] Based on the two cases, the certifying judge stated that "it appears . . . that there is no clearly controlling precedent [on the issue] in the decisions of the Supreme Judicial Court."

In this framework, Jones urges us to make explicit the point that he perceives was addressed by implication in *von Henneberg*, and conclude that, in appropriate circumstances, G. L. c. 203, § 14A, shields from personal liability the trustees of a Massachusetts business trust as well as the trustees of a donative trust associated with probate practice. As matter of statutory interpretation, Jones maintains that the Legislature's unqualified use of the word "trustee" in § 14A must mean trustees of all types of trusts. He further suggests that it would be unwise and confusing to fragment the law of trustee liability depending on the type of trust involved, and that trustees of business trusts, as well as trustees acting under a donative trust of the probate type, should be shielded from personal liability for torts in the absence of personal fault.

We first point out that the issue was not settled by the *von Henneberg* decision because the parties in that appeal neither raised nor briefed the issue now under consideration. See *McEvoy Travel Bureau, Inc.* v. *Norton Co.*, 408 Mass. 704, 719 n.12 (1990); *Labor Relations Comm'n* v. *Boston Teachers Union, Local 66*, 374 Mass. 79, 94-95 (1977). The ques-

---

[6]We note that had we relied on the common law to resolve *von Henneberg*, the outcome would have been the same. At common law, a trustee is personally liable for torts committed in the administration of a trust. See *Larson* v. *Sylvester*, 282 Mass. 352, 357-358 (1933); *Gardiner* v. *Rogers*, 267 Mass. 274, 278 (1929).

tion of the statute's application, therefore, has not been passed upon by this court. We interpret the statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Commonwealth* v. *Galvin*, 388 Mass. 326, 328 (1983), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). See also *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975).

General Laws c. 203, § 14A, was enacted as part of an omnibus probate bill. See St. 1976, § 515. The latter legislation had its genesis in studies of the Uniform Probate Code, conducted by the probate committees of the Massachusetts and Boston Bar Associations, which were undertaken with a view to considering the advisability of adopting the code in whole or in part in Massachusetts. See Young, Probate Change, 20 Boston B.J. 6, 7 (Dec. 1976). Concluding that acceptance of the entire uniform code was not warranted, the study committees, and ultimately the Legislature in St. 1976, § 515, adopted those provisions of the code which appeared to constitute improvements upon existing Massachusetts law, adapting existing statutory provisions where appropriate.

During this process, attention was given to the question of personal liability of various fiduciaries and trustees. At Massachusetts common law, a trustee was personally liable for torts committed in the administration of a trust, even though the trustee might not have been personally at fault. See *Larson* v. *Sylvester*, 282 Mass. 352, 357-358 (1933); *Gardiner* v. *Rogers*, 267 Mass. 274, 278 (1929). Similar liability attached to those acting as executors or administrators, conservators or guardians. See Young, 20 Boston B.J., *supra* at 12, 17, 18. A party with a claim against an estate would proceed against the fiduciary rather than against the assets of the estate. With the exception of a minor amendment, St. 1976, c. 515, adopted verbatim the Uniform Probate Code provisions

limiting the liability of executors, administrators, conserva-
tors, guardians and trustees to situations where the respective
fiduciaries were personally at fault. *Id.* Commentators ex-
plaining the rationale for limiting fiduciary liability indicate
that all of these fiduciaries were meant to be treated simi-
larly. [7] Because St. 1976, § 515, uses the term "trustee" in
§ 28 thereof in close association with the terms "executor,"
"administrator," "guardian," and "conservator" elsewhere in
the statute, terms that have application exclusively to the
general area of probate law, the Legislature clearly did not
intend the term "trustee" to include trustees of a Massachu-

---

[7]The comment to the Uniform Probate Code provision limiting the lia-
bility of trustees provides:

> "The purpose of this section is to make the liability of the trust and
> trustee the same as that of the decedent's estate and personal
> representative."

Unif. Probate Code, § 7-306 comment, 8 U.L.A. 560 (Master ed. 1983).
The Uniform Probate Code expressly excludes business trusts from its
scope. *Id.* at § 1-201 (53) (Supp. 1992).

An explanation by the commentator for the Boston Bar Association pro-
bate committee with respect to the limitation of trustee liability in St.
1976, c. 515, § 28, states:

> "This section is a counterpart of §§ 13 and 24 [of c. 515] limiting
> individual liability of executors and administrators and guardians,
> respectively. The reasons for the change are stated in the discussion
> under § 13."

Young, 20 Boston B.J., *supra* at 18.

Mr. Young's comment on § 13, reads in pertinent part, as follows:

"An executor or administrator is personally liable in tort not only for his
own negligent acts, but also, under the doctrine of respondeat superior, for
imputed negligence of his servants. For example, if the estate is conducting
a business, or operating real estate, the possibility exists of a tort claim
against the executor or administrator personally for something done by a
workman. The amount could exceed the value of the estate and be col-
lected from the executor personally without his having any hope of reim-
bursement. The present section would modify this doctrine in the interests
of fairness and uniformity. . . . It . . . specifies that the executor or admin-
istrator will be liable only for his own personal negligence in tort actions.
There are counterpart provisions in the omnibus bill applying the same
doctrines to conservators and guardians, *Section 24*, and to trustees, *Sec-
tion 28.*" Young, 20 Boston B.J., *supra* at 12-13.

setts business trust. [8] See *Hull* v. *Tong, supra* at 713. See also *Haas* v. *Breton,* 377 Mass. 591, 595 (1979), quoting *Kenney* v. *Building Comm'r of Melrose,* 315 Mass. 291, 295 (1943) ("The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent"). Indeed, if the Legislature had intended the result argued for by Jones, a provision limiting a trustee's individual liability would most likely have been added to G. L. c. 182, which already contains a provision governing claims against unincorporated associations and business trusts.[9] See G. L. c. 182, § 6 (1990 ed.). We conclude, therefore, that the provisions of G. L. c. 203, § 14A, limiting the personal liability of trustees, do not apply to the trustees of the trust involved here.

2. The certifying judge dismissed the bank's claim against Jones personally to the extent that the claim was premised on a contract theory. The judge found that the bank had constructive notice of the provisions of the trust, one of which limits persons extending credit to, or entering a contract with, the trust to the assets of the trust for satisfaction of their claims. Based on that finding, the judge applied the holding of *James Stewart & Co.* v. *National Shawmut Bank*

---

[8]*Taylor* v. *Richmond's New Approach Ass'n,* 351 So. 2d 1094 (Fla. Dist. Ct. App. 1977), the only case on point from another State that has been brought to our attention, reaches the same result. In *Taylor,* the District Court of Appeal of Florida held that a statutory provision limiting the personal liability of "trustees," also adapted by the Florida Legislature from the Uniform Probate Code provision limiting trustee liability, did not apply to the trustees of a business or realty trust. *Id.* at 1095-1096.

[9]Finally, we note one other confirmatory point. Statute 1976, c. 515, was entitled "An Act making certain changes in the probate laws of the commonwealth." In *Apahouser,* the Appeals Court relied in part on this title for its determination that G. L. c. 203, § 14A, applied exclusively to trustees acting under trusts of the donative type normally associated with probate practice. *Apahouser,* 26 Mass. App. Ct. at 388, citing *Board of Appeals of Hanover* v. *Housing Appeals Comm.,* 363 Mass. 339, 352-353 (1973), and *Trustees of Boston Univ.* v. *Assessors of Brookline,* 11 Mass. App. Ct. 325, 329 n.6 (1981). In this case, the title of the Act is a useful indication of legislative intent.

*of Boston*, 75 F.2d 148 (1st Cir.), cert. denied, 294 U.S. 722 (1935). In *James Stewart*, a divided Court of Appeals held that a trustee of a business trust is protected from personal liability in contract if the party entering the contract with the trustee knows where to locate the trust instrument and that instrument contains a provision protecting the trustee from personal liability. The *James Stewart* opinion cites no Massachusetts decision to support this point. The judge chose not to certify a question concerning the correctness of the rule in the *James Stewart* decision as a principle of Massachusetts law, but, since he has ordered dismissal of certain claims based on the authority of *James Stewart*, he asks us to comment on the case "in keeping with the spirit of the certification mechanism, so that the state law issues may be determined with finality." We do so briefly.

At our common law, a trustee is personally liable on a contract the trustee signs on behalf of a trust unless it is agreed that the party entering the contract with the trustee shall look only to the trust's assets for payment or damages. See *Larson* v. *Sylvester, supra* at 359; *Hull* v. *Tong, supra* at 712. The question whether such an agreement has been reached (the question posed in the *James Stewart* case and apparently in this case) is a classic question of the parties' intention. If the contract is unambiguous on the point, it will, absent fraud, govern. [10] On the other hand, if the contract is not explicit, resort will be necessary to the attendant facts and circumstances. See Restatement (Second) of Trusts,

---

[10]This court has cited the *James Stewart* case only once, in *Ballentine* v. *Eaton*, 297 Mass. 389, 391 (1937). That citation was general in nature, and made in the context of a trust instrument with an exculpatory provision which was on record and a contract where the trustees made their limitation of liability explicit by executing the contract "as trustees but not individually."

See also illustration 4 to comment b to subsection (1) of § 263 of Restatement (Second) of Trusts, indicating that a signature by a trustee on a contract as "trustee under a[n identified] declaration of trust . . . , and not otherwise" is sufficiently explicit to avoid personal liability. This type of restrictive execution is similar to the limiting execution described in *Ballentine* v. *Eaton, supra*.

§ 263 (1957), and comment b to subsection (1); [11] IIIA Fratcher, Scott on Trusts, § 263 at 431 (4th ed. 1988). [12] A reference to the record location of the trust instrument may not by itself insulate a trustee from personal liability if it can be shown that the parties intended otherwise.

The question certified is answered in the negative.

---

[11]Comment b reads as follows:

"*b. Terms of the trust.* A provision in the trust instrument that the trustee shall not be personally liable upon contracts made by him in the administration of the trust does not of itself prevent the trustee from being personally liable. Such a provision does not preclude the other party to a contract from holding the trustee personally liable on the contract, if the other party did not have knowledge or reason to know of the provision. Even though the provision was known to the other party to the contract, it does not necessarily follow that the trustee has contracted that he shall not be personally liable on the contract. Therefore, it does not necessarily preclude the other party to the contract from holding the trustee personally liable. Such a provision, however, may be considered with other facts in determining whether it was the understanding of the parties to the contract that the trustee should not be personally liable."

[12]Scott provides as follows:

"The question in each case, it is submitted, should be whether the parties as reasonable persons, in the light of the language used and all the circumstances, intended that the trustee should be personally liable or intended that the trust estate alone should be reached."